**NOT FOR PUBLICATION**

> **FILED**
> JAMES J. WALDRON, CLERK
>
> **AUGUST 13, 2009**
>
> U.S. BANKRUPTCY COURT
> NEWARK, N.J.
> BY: s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In Re:

**KRISTI E. DIMOGERODAKIS,**

               Debtor.

Case No.:  04-23833 (DHS)

Chapter 13

Judge:    Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

Kristi E. Dimogerodakis
a/k/a Christine Dimogerodakis
19 Normandy Blvd. E.
Morristown, New Jersey  07960
*Debtor Pro Se*

Dean G. Sutton, Esq.
18 Green Road
P.O. Box 187
Sparta, New Jersey 07871
*Former Counsel for Debtor*

Zucker, Goldberg & Ackerman
Michael S. Ackerman, Esq.
200 Sheffield Street, Suite 301
P.O. Box 1024
Mountainside, New Jersey 07092-0024
*Attorneys for Secured Creditor Saxon Mortgage Services, Inc.*
*as Servicer for Deutsche Bank Trust Company Americas*
*f/k/a Bankers Trust Company as Trustee and Custodian*
*by Saxon Mortgage Services, Inc. f/k/a Meritech Mortgage Services Inc.*
*as their Attorney in Fact*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the court is a cross-motion by Saxon Mortgage, Inc. ("Saxon") to reinstate/re-open a Chapter 13 bankruptcy proceeding commenced by Kristi E. Dimogerodakis ("Debtor"). The Debtor filed her petition on April 22, 2004 and a Plan was confirmed on October 1, 2004. An Order authorizing sale of the Debtor's real property ("Sale Order") was entered October 31, 2007 and the Trustee's Final Report and Account was filed May 8, 2008.

On April 1, 2008, the Debtor filed a motion to enforce the Sale Order and to hold Saxon in contempt for non-compliance with its terms. In response, Saxon filed a cross-motion seeking to reinstate/re-open the case to compel the Debtor to reimburse Saxon for escrow advances, alleging that the Debtor was unjustly enriched when Saxon advanced post-judgment taxes and insurance.

After a hearing on the motions, the Court entered an Order on July 17, 2008, which resolved the motion for contempt and the portion of Saxon's cross-motion relating to the turnover of unclaimed funds. The portion of Saxon's cross-motion to compel the reimbursement of advances was adjourned by the parties.

For the reasons stated hereafter, the Court denies Saxon's motion to re-open the case to compel the Debtor to reimburse Saxon for escrow advances. The court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (N). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

**Statements of Facts and Procedural History**

A.      **Debtor's Statement of Facts**

On April 22, 2004, the Debtor filed a Chapter 13 Petition. A plan was confirmed on October 1, 2004. *Certif. of Dean G. Sutton, Esq. in Support of Mot. Enforcing Order and for Order of Contempt (hereinafter "Sutton Cert.")* 1:1-2. The Court entered an Order on October 31, 2007, authorizing the sale of the Debtor's real property to Nicholas Dimogerodakis. *Sutton Cert*. at Ex. B. Pursuant to the Sale Order, the Chapter 13 Trustee, Marie-Ann Greenberg, sent a pay-off check in the amount of $368,455.85 to Saxon on November 30, 2007. *Sutton Cert*. 1:4. Saxon had been ordered to issue a Warrant of Satisfaction for its foreclosure judgment, a Discharge of Lis Pendens, a Dismissal of its Foreclosure Action, and a Discharge of its Mortgage upon receipt of the funds. *Sutton Cert*. 1:5. The check was not cashed and the documents not issued.

On March 6, 2008, Debtor's counsel wrote to Saxon's counsel to advise that the Trustee's check had become stale-dated, Saxon had not complied with the Court Order, and that a Motion for Contempt would be filed unless assurance was given that the issues would be remedied. *Sutton Cert*. at Ex. C. Saxon's counsel offered no response. The Chapter 13 Trustee then sent an e-mail to Saxon's counsel on March 19, 2008 requesting an immediate update. *Sutton Cert*. at Ex. D. When Saxon's counsel did not respond to the Trustee, the unclaimed pay-off funds, totaling $368,455.85, were deposited by the Trustee in the Court's registry. *Sutton Cert.* at Ex. F.

Due to Saxon's failure to respond to counsel or comply with the Order, the Debtor filed a motion to enforce the Court's Sale Order and to hold Saxon in contempt. An Order was entered July 17, 2008 resolving the motion for contempt and directing Saxon to comply with the Sale Order.

*Order Resolving Debtor's Mot. for Contempt and Resolving the Portion of Saxon Mortgage Services, Inc. Cross-Mot. Relating to Turnover of Unclaimed Funds* ¶ 2, July 17, 2008.

## B.     Creditor's Disputed and Additional Facts

Saxon attached to its cross-motion a list of advances that shows the payments it made for real estate taxes and hazard insurance after the foreclosure judgment was entered and the petition filed. *Certif. of Michael S. Ackerman, Esq. In Support of Notice of Mot. to Vacate Automatic Stay* (*hereinafter "Ackerman Cert."*) 3.  Saxon claims the advances were in the amount of $59,132.69. *Ackerman Cert.* 1:2.  No motion to amend the judgment or seek reimbursement was ever made by Saxon until it filed the instant cross-motion seeking to compel reimbursement for the escrow advances and to have unclaimed funds turned over. *Ackerman Cert.* at 1:4.  At oral argument, counsel for Saxon responded to questions regarding its client's noncompliance with the previous Orders by claiming that it did not agree to the terms of the Sale Order and that it should not have been entered, although no appeal was ever taken from the Order. *See Oral Argument*, June 10, 2009 at 11:47-48. Saxon also claims that the Debtor has been unjustly enriched by Saxon's post-judgment and post-petition payment of taxes and insurance.  Creditor's Br. 7.

## **Discussion**

Pursuant to Bankruptcy Code Section 350(b) "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." *See also* FED. R. BANKR. P. 5010.  "The right to reopen the case depends upon the circumstances of the individual case and the decision whether to reopen is committed to the court's discretion." *In re Mattera*, 203 B.R. 565, 568 (Bankr. D.N.J. 1997) (citing *In re Winebrenner*, 170 B.R. 878, 881 (Bankr. E.D. Va. 1994) (quoting *In re Carter*, 156 B.R. 768, 770 (Bankr. E.D. Va. 1993))).

### A.     The Doctrine of Merger

Under the doctrine of merger, New Jersey courts hold that once a foreclosure judgment is obtained, "the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished." *In re Roach*, 824 F.2d 1370, 1377 (3d Cir. N.J. 1987) (citing *Colonial Building-Loan Ass'n v. Mongiello Bros.*, 120 N.J. Eq. 270, 184 A. 635, 637-38 (N.J. Ch. 1936)). As a result, "when a debtor files a Chapter 13 petition in New Jersey and proposes a plan . . . after the entry of a foreclosure judgment, no contractual relationship remains and the mortgagee's rights are those that arise from its judgment." *In re Roach*, 824 F.2d at 1377. The judgment itself thus provides the amount needed to satisfy the mortgage. *See id.* (citing *Eisen v. Kostakos*, 116 N.J. Super. 358, 282 A.2d 421, 424 (App. Div. 1971)).[1]

The Third Circuit found an exception exists to the doctrine of merger "if the mortgage *clearly evidences* [their] intent to preserve the effectiveness of that provision post-judgment." *Youngman v. Fleet Bank, N.A.* (In re A&P Diversified Techs. Realty, Inc.), 467 F.3d 337, 342 (3d Cir. N.J. 2006) (quoting *In re Stendardo*, 991 F.2d 1089, 1095 (3d Cir. Pa. 1993)) (emphasis added). According to the Third Circuit precedent announced in *Stendardo*, language in a mortgage that obligates the Debtor to pay taxes and premiums does not satisfy the requirements of an exception after foreclosure judgment has entered. 991 F.2d at 1095. The exception requires clear language indicating that the obligation to pay taxes and insurance will continue following the merger of the mortgage into the foreclosure judgment. *Id.*

---

[1] Congress superseded In re Roach with the enactment of Section 1322(c)(1). In re Roach is cited here to explain the merger doctrine. *See Youngman v. Fleet Bank, N.A.* (In re A&P Diversified Techs. Realty, Inc.), 467 F.3d 337, 342 (3d Cir. N.J. 2006).

6

In *Stendardo*, the Federal National Mortgage Association ("FNMA") was given permission by the Bankruptcy Court to include post-judgment advances in its proof of claim. *Id*. at 1089. FMNA had received a default judgment against the debtors in 1986. *Id*. at 1092. The debtors filed a second Chapter 13 bankruptcy in 1989 and one year later, FMNA filed its proof of claim, including post-judgment advances for taxes and insurance premiums to protect its security interest in the property. *Id*. at 1092-93. The bankruptcy court held that FMNA was entitled to include the post-judgment expenses in its proof of claim. *Id*. at 1093. The District Court reversed this finding on appeal, "reasoning that the debtors' obligations under the mortgage were merged into the judgment obtained in the foreclosure action." *Id*. at 1091. Therefore, "[i]n order for mortgage terms to survive merger into a foreclosure judgment, [the District Court] decided that the language of the mortgage must clearly indicate that a term or clause in an agreement will remain operative after a judgment is obtained." *Id*. at 1093.

Affirming the District Court, the Third Circuit held that the mortgage was not ambiguous. No language appeared in the Mortgage that indicated the "parties' intent to preserve the Debtors' obligation to pay the relevant taxes and premiums beyond the date of the Judgment." *Id*. at 1095. The Third Circuit went on to find that:

> Although the Mortgage clearly obliges the Debtors to pay the taxes and insurance premiums at issue, it lacks any language indicating that this obligation is to survive foreclosure. The parties could have easily included such a provision in the Mortgage had this been their intent. As written, the Mortgage is unambiguous. It does not require the Debtors to pay real estate taxes and insurance premiums following the merger of the Mortgage into the judgment.

*Id.* at 1095-96. In the case at bar, the pertinent language of the mortgage does not clearly evidence that the Debtor will be held accountable for advances made following a foreclosure judgment. On

7

the contrary, the advances for taxes and insurance became "additional debt of the [Debtor] secured by *this Security Instrument.*" *See Cert. in Support of Notice of Mot. to Vacate Automatic Stay, Mortgage Attach.* ¶7. *Id.* (emphasis added). Once the judgment was entered, the Debtor's mortgage was extinguished and the "Security Instrument" no longer existed, similar to the mortgage in *Stendardo*. Thus, the unambiguous language in the mortgage at issue does not entitle Saxon to fall under the Third Circuit's exception to the merger doctrine. Here, the mortgage merged into the judgment and Saxon is not entitled to recover post-judgment advances.

In its brief, Saxon argues that the Court should allow for the recovery of its post-judgment advances, notwithstanding the doctrine of merger, and also claims that because the State of New Jersey operates the Office of Foreclosure, post-judgment advances by a mortgagee are routinely added to foreclosure judgments in New Jersey. Creditor's Br. 4. This argument fails for a number of reasons. The Office of Foreclosure enters orders and makes recommendations for the entry of orders in uncontested actions and authorizes the collection of additional lawful sums. N.J. CT. R. 1:34-6. Here, there is no evidence in the record that Saxon made application to the Office of Foreclosure to add post-judgment advances to the judgment. The Office of Foreclosure does not act on its own – the Lender must request that advances be made to the Judgment. That was not done in this case.

Saxon also cites *Resolution Trust Corporation v. Griffin* in support of its argument that the mortgagee can recover post-judgment advances under the theory of quasi-contract or unjust enrichment, despite the doctrine of merger. 290 N.J. Super. 88 (Ch. Div. 1994). However, that case clearly supports the holding in *Stendardo* that the mortgagee cannot recover post-judgment advances. In *Resolution Trust*, a mortgagee was denied recovery of post-judgment advances

following a Sheriff's sale of the property, despite the collection of surplus money. *Id*. at 93. The court held that "once the sale takes place, the Sheriff must comply with the terms of the writ in disbursing the money received." *Id*. at 92. The mortgagee "received what it asked for in applying for final judgment and writ of execution. It only has itself to blame if it is out of pocket." *Id*. at 93. Similarly, in this proceeding, once the sale took place, the Trustee must comply with the terms of the Judgment. Saxon only has itself to blame for not asking to have the Judgment amended or appealing the Sale Order or the final report issued by the Trustee.

As to Saxon's argument that it is entitled to recover its advances under the theory of quasi-contract or unjust enrichment, *Resolution Trust* is clearly distinguishable. The court there held that the mortgagee might be entitled to recover because the defendants held title to the property before the sale and continued to hold title after the sale. *Id*. Therefore, the taxes on the property were the responsibility of the defendants both before and after the property was sold. *Id*. at 93-94. In this case, however, the Debtor is not the post-sale titleholder of the property. While the Debtor is presently paying rent to the new owners and continues living on the property, she is no longer the legal owner of the property.

Even applying the principles of quasi-contract or unjust-enrichment, Saxon would not be entitled to recover its post-judgment advances. "[T]he key element of a quasi-contract claim is that one party has been unjustly enriched at the expense of another." *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 144 N.J. 564, 575 (N.J. 1996). In *Stendardo,* this element was addressed and denied. *See* 991 F.2d at 1099-1101. The decisive point from *Stendardo* is that "[a]t the time judgment was entered, the Debtors were no longer mortgagors." *Id.* at 1100. Thus, Saxon "cannot rely on unjust enrichment for reimbursement because its payment of Post-Judgment

9

Expenses protected its own interest in the property." *Id*. at 1101. As the Third Circuit noted in *Stendardo*, "had the foreclosed property been subjected to a hazard loss. . . the proceeds of that loss would have inured to FNMA and not to the [debtors]." *Id*. Therefore, any benefit the Debtor received from the post-judgment advances were incidental to Saxon's preservation of its own interest because the Debtors no longer had an obligation to pay taxes or insurance. *Id*.

**B.     Finality of Bankruptcy Proceedings**

The goal of a bankruptcy proceeding is to provide the debtor with a "fresh start." A basic underlying feature of Chapter 13 plans is finality, which allows debtors and other parties to take part in a plan which will not be subject to change. *In re Jackson-Bostic*, No. 02-52127, 2006 Bankr. LEXIS 4132, at *8 (Bankr. D.N.J. June 14, 2006). In discussing finality, the Third Circuit has held that:

> [T]he purpose of bankruptcy law and the provisions for reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

*In re Szostek*, 886 F.2d 1405, 1409 (3d Cir. 1989) (citing *In re Penn Central*, 771 F.2d 762, 767 (3d Cir. 1985), citing *Duryee v. Erie R.R. Co.*, 175 F.2d 58, 61-63 (6th Cir.), *cert. denied*, 338 U.S. 861, 94 L. Ed. 527, 70 S. Ct. 103 (1949)). The Third Circuit goes so far as to state that finality is even more important than actual compliance with the Bankruptcy Code. *Szostek*, 886 F.2d at 1413.

Here, an Order was entered authorizing the sale of the Debtor's real property. Following the sale, Saxon was to have its Judgment paid and issue a warrant of satisfaction for its foreclosure

10

judgment. *Order Authorizing Sale of Property* ¶ 3, October 31, 2007. No appeal of that Order was taken. Saxon did not comply with the Order, leading the Court to issue a second Order directing Saxon to comply. Despite this, Saxon still did not issue the warrant and claimed at oral argument that it never consented to the Sale Order in the first place. Under Rule 6004(b) of the Federal Rules of Bankruptcy Procedure, Saxon had at least five days to object to the proposed sale of the property. Saxon neither filed an objection, nor raised an objection until months later at oral argument on its cross-motion to compel reimbursement of escrow advances and for payment of unclaimed funds on June 10, 2009. This argument notwithstanding, "the general rule is that the acceptance of the plan by a secured creditor can be inferred by the absence of an objection." *In re Szostek*, 886 F.2d. at 1413 (citing *In re Ruti-Sweetwater, Inc.*, 838 F.2d 1263, 1266 (10th Cir. 1988)). This is also consistent with Bankruptcy Rule 5009, which reads:

> [I]f in a . . . chapter 13 case the trustee has filed a final report and final account, and has certified that the estate has been fully administered, and if within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered.

Here, the final report was filed on November 30, 2007. At no time did Saxon file an objection to the final report. Moreover, the Court is able to infer acceptance of the Sale from Saxon's failure to timely object to either the Sale Order or the Trustee's final report.

Saxon's advances were made between January 2004 and January 2008. Saxon had four years to bring an action to recover the advances prior to the close of this case. Creditors are expected to take an active role in protecting their claims. *See In re Szostek,* 886 F.2d at 1414. Otherwise, deadlines for filing objections would be meaningless. *Id.* Other courts have held that a "creditor cannot simply sit on its rights and expect that the bankruptcy court or trustee will assume the duty

11

of protecting its interests." *In re Andersen*, 179 F.3d 1253, 1257 (10th Cir. 1999) (citations omitted); *See IRS v. Patriot Cont. Corp.*, No. 06-2133, 2007 U.S. Dist. LEXIS 8662, at *40 (D.N.J. Feb. 6, 2007) (quoting *In re Andersen*, 179 F.3d 1253, 1257 (10th Cir. 1999) (citations omitted) (overruled on different grounds)); *In re Harvey*, 213 F.3d 318, 322 (7th Cir. 2000) (holding that creditor should have expressed its doubts about confirmation plan at the time the doubts were present); *United States v. Black (In re Black)*, No. 99-0267, 2000 U.S. Dist. LEXIS 5880, at *17 (D. Ariz. March 30, 2000) (holding a confirmation order determines finality when a creditor had notice and opportunity to object and appeal).

Saxon offers no substantive reason why its claim for advances was not made until April 23, 2008, over four years after the initial advances were made and six months after the Sale Order was entered. Its cross-motion must be denied.

## Conclusion

For the reasons set forth above, the Court does not find the cause required to re-open the case and Saxon's cross-motion is denied.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

/s/ Donald H. Steckroth
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: August 13, 2009